IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-01225-WYD-MJW

KEITH SCHWARTZ,

      Plaintiff,

v.

BANK OF AMERICA, N.A.
BAC HOME LOANS SERVICING, LP
BILL WALLACE IN HIS CAPACITY AS
PUBLIC TRUSTEE, SUMMIT COUNTY, COLORADO

      Defendants.

---

**ORDER**

---

## I.     INTRODUCTION

THIS MATTER is before the Court on Defendants Bank of America, N.A.'s and

BAC Home Loan Servicing, LP's Motion Dismiss Plaintiff's First Amended Complaint

and Jury Demand, filed November 18, 2010 [ECF No. 41].  A Response was filed

November 15, 2010, and a Reply was filed November 24, 2010.  Also pending before

the Court are Defendant Bank of America's Motion to Dissolve Preliminary Injunction

and Request for a Forthwith Hearing, filed October 8, 2010 [ECF No. 26]; Plaintiff's

Request for Sanctions, filed October 23, 2010 [ECF No. 33]; Defendant Bank of

America, N.A.'s Motion for Sanctions Under Rule 11, filed November 23, 2010 [ECF No.

43]; and Defendant Bank of America, N.A.'s Request for Hearing on Motion to Dissolve

Preliminary Injunction, filed December 6, 2010 [ECF No. 49].

II.   BACKGROUND

This case involves the attempted foreclosure of Plaintiff's property initiated by Defendant Bank of America on or about March 13, 2009, through the Public Trustee for Summit County, Colorado.  On May 7, 2009, the District for Summit County, Colorado, issued a order authorizing the sale Plaintiff's property pursuant to Colo. R. Civ. P. 120 in case no. 2009cv125 (the "Foreclosure Proceeding").  The foreclosure was assigned number PT09-048.  The trustee's sale of the property was originally noticed for October 13, 2009, but Defendant Bank of America repeatedly postponed the sale.  It appears that the state court dismissed the Foreclosure Proceeding without prejudice on March 26, 2010, for failure to timely prosecute, with leave to reopen upon submission of a Return Order Approving Sale and Motion for Dismissal.

On May 11, 2010, Plaintiff filed the instant action in District Court for Summit County asserting numerous claims related to Defendants' conduct both before and during the foreclosure process.  In addition, on May 17, 2010, Plaintiff sought and obtained a Preliminary Injunction restraining and enjoining the Public Trustee from carrying out any foreclosure sale in PT09-048.  On May 26, 2010, Defendants removed this case from Summit County District Court to this Court.  On October 8, 2010, almost five months after removing this case, Defendant Bank of America sought a "forthwith" hearing requesting reconsideration of the state court's issuance of a preliminary injunction.  It later withdrew its request for a forthwith hearing, but on December 6, 2010, it again sought a hearing on its motion for reconsideration of the preliminary

injunction, despite the fact that the Foreclosure Proceeding was dismissed by the Summit County District Court on October 18, 2010.

Pursuant to status reports filed by the parties on February 4, 2011, in order to proceed with a foreclosure of Plaintiff's property, Defendant Bank of America will need to initiate a new Rule 120 foreclosure proceeding in state court.  However, Defendant Bank of America states it has not filed a renewed foreclosure action as it believes there is a possibility it may be barred from proceeding with foreclosure by the previously issued preliminary injunction.

An Amended Complaint was filed on November 1, 2010.  Therein, Plaintiff alleges that he is the owner of certain real property located in Silverthorne Colorado (the "Property"), and that Defendant Bank of America is the putative owner of a security interest in the Property by virtue of a Deed of Trust secured by a Promissory Note in the amount of $1,250,000.00, dated November 23, 2005, and recorded on November 29, 2005.  Plaintiff contends that in early 2009 he attempted to negotiate a modification of his debt with Defendant Bank of America and/or Defendant BAC Home Loans, but was told that modification would require approval of an investor called "CIG" and potentially other investors.  According to Plaintiff, despite numerous requests, Defendants failed to provide him with the names of any of these investors.

Plaintiff asserts nine separate claims for relief including claims for (1) wrongful foreclosure; (2) declaratory relief; (3) violation of the Colorado Fair Debt Collection Practices Act; (4) violation of the Real Estate Settlement Procedures Act; (5) misrepresentation; (6) negligent lending; (7) breach of contract; (8) promissory estoppel;

and (9) outrageous conduct.

Defendants have moved to dissolve the Preliminary Injunction entered by the state trial court prior, and to dismiss all of the claims in the Amended Complaint.  In addition, Defendant Bank of America has asserted counterclaims for breach of contract and unjust enrichment[1].  Finally, the parties have filed cross-motions for sanctions under Rule 11.

III.    ANALYSIS

A.    <u>Defendant Bank of America's Motion to Dissolve Preliminary Injunction</u>

As an initial matter, I address Defendant Bank of America's motion to dissolve the Preliminary Injunction entered by the state trial court prior to removal.  On May 17, 2010, Plaintiff sought and obtained a Preliminary Injunction restraining and enjoining the Public Trustee from carrying out any foreclosure sale in PT09-048.  On May 26, 2010, Defendants removed this case from Summit County District Court to this Court.  On October 8, 2010, almost five months after removing this case, Defendant Bank of America sought a "forthwith" hearing requesting reconsideration of the state court's issuance of a preliminary injunction.  It later withdrew its request for a forthwith hearing, but on December 6, 2010, it again sought a hearing on its motion for reconsideration of the preliminary injunction, despite the fact that the Foreclosure Proceeding was dismissed by the Summit County District Court on October 18, 2010.

Pursuant to status reports filed by the parties on February 4, 2011, in order to

_____

[1]Defendant's motion for summary judgment on its counterclaim for breach of contract will be addressed in a separate order.

proceed with a foreclosure of Plaintiff's property, Defendant Bank of America will need
to initiate a new Rule 120 foreclosure proceeding in state court.

The plain language of the Preliminary Injunction issued prior to Defendants'
removal of this action clearly states "The Public Trustee is hereby restrained and
enjoined from carrying out PT09-048 pending further Order of the Court." The
Foreclosure Proceeding cited in the body of the Preliminary Injunction has been
dismissed. Therefore, there is nothing for me to reconsider and I find Defendant Bank
of America's motion should be dismissed as moot.

B.     Motion to Dismiss

I now turn to the arguments raised in Defendants motion to dismiss the Amended
Complaint.

1.     Standard of Review

The Federal Rules of Civil Procedure provide that a defendant may move to
dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R.
Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh
potential evidence that the parties might present at trial, but to assess whether the
plaintiff's complaint alone is legally sufficient to state a claim for which relief may be
granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and
quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all
of plaintiff's factual allegations are true and construes them in the light most favorable to
the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Moreover, a plaintiff's obligation to provide the grounds of his entitlement to relief requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 546.  In addition, the "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level." *Id*. at 555.

> ### 2.   Plaintiff's Claims for Wrongful Foreclosure and Declaratory Relief

Plaintiff's first two claims for relief challenge Defendants' conduct during the state Foreclosure Proceeding and seek to prevent or reverse foreclosure number PT09-048. In addition, Plaintiff seeks a declaration that Defendants lacked standing to initiate the Foreclosure Proceeding.

With respect to his claim for wrongful foreclosure, Plaintiff complains that Defendant Bank of America attempted to complete foreclosure PT09-048 without complying with the Colorado foreclosure statute because it was not a "holder of an evidence of debt" pursuant to C.R.S. § 38-38-100.3(10).  Pursuant to C.R.S. § 38-38-

101(1), the only person legally permitted to commence a public trustee foreclosure is the "holder of an evidence of debt," defined as "the person in actual possession of or person entitled to enforce an evidence of debt; *except that 'holder of an evidence of debt' does not include a person acting as a nominee solely for the purpose of holding the evidence of debt or deed of trust as an electronic registry without an authority to enforce the evidence of debt or deed of trust.*"  Plaintiff alleges that prior to commencing the Foreclosure Proceeding, Defendant Bank of America was not in actual possession of the Promissory Note or Deed of Trust and was "acting as a nominee solely for the purpose of holding [the Debt Instruments] as an electronic registry without any authority to enforce the [Debt Instruments]."  Plaintiff further alleges that Defendant Bank of America failed to properly notify him of the foreclosure, as required by C.R.S. § 38-38-102.5, Colo. R. Civ. P. 120 and the Deed of Trust, and failed to properly verify its motion filed pursuant to Rule 120.  Similarly, Plaintiff's request for declaratory relief is premised on his assertion that Bank of America is not a "holder" of evidence of debt and is not in actual possession of the debt instruments.

    As an initial matter, I note that Colorado does not recognize a claim for damages based on "wrongful foreclosure."  Contrary to Plaintiff's assertion, the Colorado Court of Appeals did not recognize such a claim in *Commercial Equity Corp. v. Majestic Sav. & Loan Ass'n*, 620 P.2d 56, 58 (Colo. App. 1980).  Second, the Foreclosure Proceeding that Plaintiff challenges was dismissed by the Summit County District Court on October 18, 2010, prior to the completion of the public trustee's foreclosure sale.  Defendants have not yet attempted to renew any foreclosure against Plaintiff.  Therefore, Plaintiff's

complaints with respect to technical defects in the original Foreclosure Proceeding, as well as his request for a declaration that Bank of America lacked standing to initiate that proceeding, appear to be moot.

Article III limits the jurisdiction of federal courts to consider only "actual cases or controversies." U.S. Const. Art. III.  When an intervening event prevents the court from granting effective relief to a litigant, the action should be dismissed as moot.  *Mills v. Green*, 159 U.S. 651, 653; *see also Colorado Interstate Gas Co. v. F.E.R.C.*, 890 F.2d 1121, 1126 (10th Cir. 1989); *C&C Products, Inc. v. Messick*, 700 F.2d 635, 656 (11th Cir. 1983) (no jurisdiction exists to decide questions which have become moot by reason of intervening events).  An exception to the mootness doctrine applies as to issues which are "capable of repetition, yet evading review."  *McKeen v. U.S. Forest Service*, 615 F.3d 1244, 1255-56 (10th Cir. 2010).  That exception preserves justiciability of an issue where: "(1) the duration of the challenged conduct is too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Id.* (citing *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)).

Here, the dismissal of the state Foreclosure Proceeding is an intervening event that renders Plaintiff's first and second claims moot.  In addition, while there may be a reasonable expectation that Defendants will attempt to renew a foreclosure proceeding against Plaintiff, I find that the duration of such a proceeding is not too short for Plaintiff to raise and litigate any issues related to the propriety of that proceeding, including his

assertion that Defendant Bank of America lacks standing and is not a "holder" of evidence of debt.

Because I find that Plaintiff first and second claims for relief are moot and do not fall into the "evading review" exception, both claims will be dismissed without prejudice.

       3.      <u>Plaintiff's Claim for Violation of the Colorado Fair Debt Collection Practices Act</u>

Plaintiff's third claim for relief is for violations of the Colorado Fair Debt Collection Practices Act (the "Act").  Here Plaintiff asserts that in their initial written communication to him concerning collection of amounts due under the Promissory Note, Defendants were required to provide him with a written notice complying with C.R.S. §§ 12-14-105(3)(c) and (e).  According to Defendants, this claim must be dismissed because lenders and loan servicers are specifically excluded from the Act, which applies exclusively to "debt collectors" or "collection agencies."  *See* C.R.S. § 12-14-102(1).

The Act defines a "collection agency" to mean any (1) person who engages in a business the principal purpose of which is the collection of debts; or (2) a person who regularly collects or attempts to collect debts owed or due another, takes assignments of debts for collection purposes, solicits for collection debts owed or due another, or collects debts for the department of personnel.  The Act defines the term "debt collector" to include "any person employed or engaged by a collection agency to perform the collection of debts owed or due or asserted to be owed or due to another . . .."  C.R.S. § 12-14-103(7).  The Act specifically excludes from its definition of collection agency:

> [a]ny person whose principal business is the making of loans
> <u>or</u> the servicing of debt not in default and who acts as a loan

> correspondent, or seller and servicer for the owner or holder
> of a debt which is secured by a deed of trust on real property
> whether or not such debt is also secured by an interest in
> personal property.

C.R.S. § 12-14-103(2)(b)(VIII) (emphasis added).

In the Amended Complaint Plaintiff alleges that Defendant Bank of America, N.A. is a national banking association, and that Defendant BAC Home Loans is a limited partnership that services loans for Bank of America. Based on the allegations in the Amended Complaint, it appears that Defendants fall squarely within the Act's exception for lenders and loan servicers. Plaintiff maintains that Defendants do not fall within the exception because Defendant Bank of America is not the "owner or holder" of the debts at issue, therefore, BAC Home Loans is not a "servicer" for the "owner or holder of a debt." I note that this argument appears to be in direct conflict with Plaintiff's assertion that Defendant BAC Home Loans is a loan servicer and, therefore, liable to him under the Real Estate Settlement Procedures Act ("RESPA"). More significantly, however, there are no allegations in the Amended Complaint that the principal purpose of the business of either Defendant Bank of America or Defendant BAC Home Loans is the collection of debts, or that these Defendants regularly collect or attempt to collect debts due another, or that these Defendants otherwise fall within the definition of a "debt collector" or "collection agency" under the Colorado Act. I find that Plaintiff has failed to allege that Defendants fall within the purview of the Act. Therefore, Plaintiff's third claim for relief should be dismissed.

4.      Plaintiff's Claim for Violation of RESPA

I now turn to Plaintiff's fourth claim for relief for violation of RESPA.  In

connection with this claim, Plaintiff alleges that he sent Defendants two "Qualified

Written Requests" pursuant to 12 U.S.C. § 2605(e)(B), requesting "the names or names

of the true beneficial owner or owners [of the Debt Instruments] so that he may try to

negotiate directly with them for a modification of the loan," and Defendants improperly

failed or refused to respond to his request.  The provision of RESPA upon which Plaintiff

relies provides that a loan servicer has a duty to respond to borrower inquiries as

follows:

> If any servicer of a federally related mortgage loan receives
> a qualified written request from the borrower (or an agent of
> the borrower) *for information relating to the servicing of such*
> *loan*, the servicer shall provide a written response
> acknowledging receipt of the correspondence within 20 days
> . . ..

12 U.S.C. § 2605(e)(1)(A)(emphasis added).  The term "servicing" is defined as:

> receiving any scheduled periodic payments from a borrower
> pursuant to the terms of any loan, including amounts for
> escrow accounts . . . and making the payments of principal
> and interest and such other payments with respect to the
> amounts received from the borrower as may be required
> pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).  Here, Plaintiff's written correspondence requests Defendants

provide him with a list of the names of individual investors and does not relate to the

"servicing" of the loan as defined by RESPA.  Moreover, even if Plaintiff's written

correspondence could be construed as a QWR, I find that Defendant BAC Home Loan's

response to Plaintiff's inquiry was sufficient.  RESPA requires that in response to a

QWR, a loan servicer should conduct an investigation and provide borrower with a written explanation or clarification that includes the information requested, or an explanation of why the information requested is unavailable or cannot be obtained, and the name and telephone number of an individual employed by the servicer who can provide assistance.  12 U.S.C. § 2605(e)(2)(C).  Here, Defendant BAC Home Loans provided all required information and informed Plaintiff that the "current owner of the note is Bank of America, N.A."  I find that Plaintiff's has failed to state a claim for relief under RESPA and conclude that his fourth claim for relief must be dismissed.

### 5.    Plaintiff's Breach of Contract Claim

I next address Plaintiff's seventh claim for relief for breach of contract.  Here, Plaintiff alleges that on or about August, 2007, he contacted Defendants seeking a loan modification but was informed that he was ineligible for a loan modification because the loan was current.  Thereafter, Plaintiff stopped making payments on the loan for the months of August, 2007, through November, 2007.  In December, 2007, Plaintiff again requested a loan modification and was informed that if he paid the loan current, Defendants would modify the terms of the loan.  Plaintiff paid the loan current, but contends that Defendants did not modify the terms of the loan.

Plaintiff requested loan modification again in early 2009, and he alleges that at this time the parties agreed that Defendants would reduce the interest rate of the loan to 3.375% for five years after which the loan would continue for the original term at a fixed rate.  Plaintiff alleges that he subsequently received a letter dated April 23, 2009, stating that Defendants agreed to approve a loan "modification" that would keep the original

interest rate of 6.375% but would extend the term of the loan for an additional ten years. When Plaintiff contacted Defendants to inquire as to the discrepancy between the letter and his understanding of the parties' agreement, he was informed that the interest rate would be 3.375% for the first five years (as initially discussed), but Bank of America would extend the original loan term and would not offer a fixed rate after the first five years.

Based on these allegations, Plaintiff contends that the parties entered into "two separate contracts to modify the Debt Instruments," and that Defendants breached these contracts.  In response, Defendants contend that Plaintiff's claim for breach of contract is barred by Colorado's Credit Agreement Statute of Frauds, which provides:

> Notwithstanding any statutory or case law to the contrary . . . no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought.

C.R.S. § 38-10-124(2).  Colorado defines a credit agreement as:

> (I) A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;
>
> (II) Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraphs (I) and (III) of this paragraph (a); and
>
> (III) Any representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, or collection of sums due under, any of the credit agreements defined in subparagraphs (I) and (II)

of this paragraph (a).

C.R.S. § 38-10-124(1)(a).  Finally, the statute provides that *"A credit agreement may not be implied under any circumstances,* including, *without limitation,* from the relationship, fiduciary or otherwise, of the creditor and the debtor or from performance or partial performance by or on behalf of the creditor or debtor, or by promissory estoppel.  C.R.S. § 38-10-124(3) (emphasis added).

Here, Plaintiff concedes that the Credit Agreement Statute of Frauds is applicable, but contends that the April 23, 2009, letter from Bank of America, and various internal notes maintained by Bank of America correcting the error in the interest rate quoted in that letter, constitute a written credit agreement under the statute. Plaintiff makes this assertion despite allegations in the Amended Complaint that none of these documents actually contain the terms of the oral agreement for loan modification he contends he reached with Defendants in early 2009.

I find that Plaintiff has not alleged the existence of a written credit agreement. The statute clearly requires a signed writing that establishes a credit agreement and explicitly mandates that credit agreements "*may not be implied under any circumstances."*  Plaintiff has not identified any written agreement that encompasses the loan modification terms he alleges he reached in his oral communication with Defendants in early 2009.  In fact, the April 23, 2009, letter states that Plaintiff "declined the modification agreement," that the parties orally discussed.  There was certainly no meeting of the minds as to the terms of an agreement to modify Plaintiff's loan.  Plaintiff essentially asks that I imply the existence of a written credit agreement.  In addition,

Plaintiff has pointed to no Colorado case law allowing the writing requirement of the statute to be satisfied with multiple writings.  I must broadly apply the statute "to give effect to its central purpose of promoting certainty in credit agreements made by members of the credit industry." *Premier Farm Credit, PCA v. W-Cattle, LLC*, 886 P.2d 299, 301-302 (Colo. App. 1994).  I find that the documents relied upon by Plaintiff do not constitute a written contract, promise, undertaking, or commitment to modify his loan.  Therefore, Plaintiff's seventh claim for relief for breach of contract must be dismissed for failure to comply with Colorado's Credit Agreement Statute of Frauds.

6.    Plaintiff's Promissory Estoppel Claim

Next, I address Plaintiff's eighth claim for relief for promissory estoppel.  Promissory estoppel is an equitable doctrine, providing a remedy for individuals who rely to their detriment, under certain circumstances, on promises, despite the absence of any mutual agreement by the parties on all of the essential terms of a contract. *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, LLC*, 176 P.3d 737, 741 (Colo. 2007); *Snow Basin LTD v. Boettcher & Co.*, 805 P.2d 1151, 1154 (Colo. App. 1990).  The elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonable have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonable relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.  *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995); Restatement 2nd of Contracts § 90.

In the Amended Complaint, Plaintiff recites the elements of promissory estoppel,

but fails to clearly identify the "promise" made to him or the manner in which he relied on the "promise" to his detriment.  Even assuming the promise Plaintiff is seeking to enforce is the alleged oral promise by Defendants to modify his loan to 3.375% for five years after which the loan would continue for the original term at a fixed rate, Plaintiff does not allege how he relied upon this promise to his detriment such that he would be entitled to equitable relief.  Even construing all allegations in the light most favorable to Plaintiff, I find that he has failed to set forth facts sufficient to state a plausible claim for relief.  Plaintiff's conclusory allegations and his recitation of the elements of promissory estoppel are not sufficient.  *Twombly*, 550 U.S. at 546.  Therefore, Plaintiff's seventh claim for relief for promissory estoppel must be dismissed.

7.  <u>Plaintiff's Remaining Tort Claims</u>

Finally, I turn to Plaintiff's remaining tort claims for misrepresentation, negligent lending, and outrageous conduct.  In connection with his fifth claim for relief for misrepresentation, Plaintiff alleges that Defendant Bank of America "negligently or maliciously concealed or misrepresented material information about the transaction that is the subject of this action."  Plaintiff does not identify the alleged misrepresentation or explain why it was material.  I find that these threadbare allegations are insufficient to put Defendants on notice of the grounds upon which Plaintiff's misrepresentation claims rests; therefore, this claim must be dismissed pursuant to *Twombly*, *supra*.

Similarly, in his ninth claim for relief for outrageous conduct claim, Plaintiff alleges only that Defendant Bank of America engaged in "extreme and outrageous conduct" with the intent of causing him "severe emotional distress," but he does not

identify what the "outrageous conduct" consisted of.  While this claim incorporates the preceding allegations in the Amended Complaint, I find that none of the allegations in the Amended Complaint are sufficient to sustain a claim for outrageous conduct.  *See McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d 1122, 1126 (Colo. App. 2000), *cert. denied* (Jan. 2001).  "Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, it is the initial responsibility of a court to determine whether reasonable persons could differ on the question." *Id.*  "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *Id.*  "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*  Here, I find as a matter of law that Plaintiff has failed to allege conduct sufficient to meet this high standard, and his ninth claim for relief for outrageous conduct must be dismissed.

Turning to Plaintiff's sixth claim for relief for negligent lending, I find that this claim must also be dismissed.  In connection with this claim, Plaintiff alleges that Defendant Bank of America owed him a duty to "exercise reasonable diligence in ensuring that the Property was properly valued by the appraiser, that [Plaintiff] would be able to replay the loan at issue, and that certain disclosures and warnings were made to [Plaintiff]."  Plaintiff contends that Defendant's alleged breach of these duties gives rise to liability for "negligent lending."

As an initial matter, Plaintiff identifies no case law in Colorado recognizing a

cause of action for "negligent lending."  Even construing Plaintiff's sixth claim for relief

as a claim for negligence, such a claim must fail when it is based on circumstances for

which the law does not impose a legal duty.  *English v. Griffith*, 99 P.3d 90, 93 (Colo.

App. 2004).  In response to the motion to dismiss, Plaintiff has not identified any

authority in support of his contention that Defendant Bank of America had a legal duty to

ensure that the property Plaintiff purchased was valued by an appraiser, or to ensure

that he would be able to repay the loan.  Here, the loan transaction between Plaintiff

and Defendant Bank of America cumulated in Plaintiff's execution of a Promissory Note.

Thus, the relationship between the parties is a contractual relationship and, absent an

independent duty of care, all of the duties Defendant Bank of America owed to Plaintiff

are purely contractual in nature.  In *Town of Alma v. Azco Construction, Inc*, 10 P. 3d

1256, 1259 (Colo. 2000), the Colorado Supreme Court held that a party suffering only

economic loss resulting from breach of a contractual duty cannot assert a tort claim for

such breach, absent an independent duty of care.  Here, Plaintiff has failed to allege

any facts that would give rise to an independent duty of care on the part of Defendant

Bank of America in this case.  As such, I find that Plaintiff's sixth claim for relief is barred

by the economic loss rule, and must be dismissed.

      D.   <u>Motions for Sanctions</u>

      I now address the parties' motions for sanctions.  Plaintiff filed his motion for

sanctions on October 23, 2010, after Defendant Bank of America filed its motion to

dissolve the state court's preliminary injunction enjoining the Foreclosure Proceeding.

Plaintiff complains that the motion to dissolve is supported by an Affidavit of Nichole M.

Orr, and asserts that the Supreme Court of the State of New Your recently entered summary judgment against an affiliate of Bank of America on the basis that two separate affidavits signed by Ms. Orr demonstrated that she did not have "personal knowledge" of the transaction sufficient support the claims in the affidavit.  Plaintiff further contends that upon information and belief, many of the representations made by Ms. Orr in affidavits submitted in this case are "false," and that Ms. Orr and Bank of America knew or should have known that these representations were false.  Plaintiff attaches to his motion various press releases, news paper articles, an opinion from an unrelated court case, and documents submitted in connection with the Foreclosure Proceedings.

Without citation to any legal authority other than my inherent ability to impose sanctions for bad-faith conduct, Plaintiff requests a variety of "sanctions" including his costs and attorney fees incurred in this litigation, striking the Affidavit at issue, and foreclosing Defendant Bank of America from presenting any evidence in this litigation with regard to matters contained in the Affidavit.

Defendant Bank of America vigorously disputes the allegations in the motion for sanctions, and has filed its own motion for sanctions under Fed. R. Civ. P. 11.

Upon review of the motions, I find that Plaintiff has not provided sufficient proof of bad faith conduct by Defendant Bank of America *in this case* that would make an award of sanctions appropriate.  However, I do not find that Plaintiff's motion for sanctions is so wholly without merit or objectively unreasonable as to justify the imposition of sanctions against Plaintiff.  Therefore, both motions for sanctions will be denied.

IV.     CONCLUSION

For the reasons set forth herein, it is hereby

ORDERED that Defendants Bank of American, N.A.'s and BAC Home Loan

Servicing, LP's Motion Dismiss Plaintiff's First Amended Complaint and Jury Demand,

filed November 18, 2010 [ECF No. 41] is **GRANTED**.  In accordance therewith,

Plaintiff's first and second claims for relief for wrongful foreclosure and declaratory relief

are **DISMISSED WITHOUT PREJUDICE** and all of Plaintiff's remaining claims are

**DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that Defendant Bank of America's Motion to Dissolve

Preliminary Injunction and Request for a Forthwith Hearing, filed October 8, 2010 [ECF

No. 26] and Defendant Bank of America, N.A.'s Request for Hearing on Motion to

Dissolve Preliminary Injunction, filed December 6, 2010 [ECF No. 49] are **DENIED AS

MOOT**.  It is

FURTHER ORDERED that Plaintiff's Request for Sanctions, filed October 23,

2010 [ECF No. 33] is **DENIED**.  It is

FURTHER ORDERED that Defendant Bank of America, N.A.'s Motion for

Sanctions Under Rule 11, filed November 23, 2010 [ECF No. 43] is **DENIED**.

Dated:  March 28, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge